UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LATAUSHA SIMMONS,

                         Plaintiff,                    Civil Action No. 22-11953

v.                                                     Linda V. Parker
                                                       United States District Judge

COUNTY OF WAYNE, *et al.*,                             David R. Grand
                                                       United States Magistrate Judge

                         Defendants.
_____/

## REPORT AND RECOMMENDATION ON WAYNE COUNTY DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT (ECF No. 30) AND CFP DEFENDANTS' MOTION TO DISMISS (ECF No. 23), AND TO *SUA SPONTE* DISMISS CLAIMS AGAINST DEFENDANT THOMAS PURSUANT TO 28 U.S.C. § 1915(e)

I.   **Background**

On August 19, 2022, Plaintiff Latausha Simmons ("Simmons") filed her original

complaint in this case, asserting 13 causes of action related to her alleged unlawful

detainment in connection with a state court criminal case against her (the "Criminal

Case").[1]  (ECF No. 1).  As defendants, she named Wayne County, the Wayne County Jail,

the Center for Forensic Psychiatry, several individuals (including the Honorable Regina

Thomas, the state court judge who presided over Simmons' Criminal Case), and multiple

John/Jane Does.  (*Id.*).  In short, Simmons alleged, in extremely broad and sweeping terms,

_____

[1] This case has been referred to the undersigned for management, hearing and determination of all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A), and for any reports and recommendations on dispositive matters that may be necessary pursuant to 28 U.S.C. § 636(b)(1)(B).  (ECF No. 5).

that the defendants all "conspired" "to violate [her] civil rights, due process rights and constitutional rights" by "blatantly misrepresent[ing] and misstat[ing] facts" in order to cause her to be subjected to excessive force, sexual assault, false imprisonment, and the denial of proper medical care.  (*Id.*, PageID.2).  On September 23, 2022, the undersigned issued a Report and Recommendation (the "R&R") to dismiss (1) Simmons' claims against the Wayne County Jail (because it is not an entity subject to suit); (2) Simmons' claims against Judge Thomas (because she is entitled to absolute judicial immunity); and (3) Simmons' conspiracy claim (because she failed to allege sufficient facts to support that claim).  (ECF No. 8).  That R&R was adopted by the Honorable Linda V. Parker on February 15, 2023.  (ECF No. 32).

On January 6, 2023, Simmons filed, by right, an amended complaint, which is now the operative complaint.  (ECF No. 15).  The defendants named in Simmons' amended complaint can be broken into three groups: (1) the "Wayne County Defendants," comprised of Wayne County, Undersheriff Daniel Pfannes ("Pfannes"), Chief of Jails and Courts Robert Dunlap ("Dunlap"), Deputy Chief of Jails James Davis ("Davis"), and multiple Jane and John Doe Courtroom Sheriff Deputies ("Courtroom Doe Deputies"); (2) the "CFP Defendants," comprised of the Center for Forensic Psychiatry ("CFP"), its Acting Hospital Director, Estelle Horne, and "Jane Doe Black Female Examiner" (the "CFP Examiner"); and (3) Judge Thomas.  Simmons sues each of the aforementioned individuals in his/her individual and official capacities.  She seeks unspecified injunctive relief against Judge Thomas, and money damages – including punitive damages – against all of the other defendants.

2

While Simmons' amended complaint is difficult to understand, her claims essentially arise out Judge Thomas' decision to revoke her bond and detain her in the Criminal Case and the events that immediately followed that decision.[2] Thus, some basic background about the Criminal Case is required.

On August 27, 2018, Simmons got into an altercation with a neighbor, attempted to use her vehicle to strike the neighbor, and then sprayed the neighbor with mace. (ECF Nos. 30-1, 30-7). Two days later, Simmons was arraigned on two counts of felonious assault with a dangerous weapon. (ECF No. 30-3). The 36th District Court bound her over for trial in the Circuit Court on those charges. (*Id.*).

Simmons' case was ultimately assigned to Judge Thomas. (ECF No. 30-3, PageID.282). On June 5, 2019, after a series of pre-trial proceedings, including Simmons' counsel moving to withdraw, and Simmons failing to appear for certain hearings, Judge Thomas ordered Simmons to undergo a competency evaluation. (*Id.*). There is no dispute that Simmons appeared for the competency evaluation at CFP as Judge Thomas had ordered and was evaluated by defendant CFP Examiner.

On August 14, 2019, Simmons was back before Judge Thomas for a competency hearing, when Judge Thomas explained to Simmons that she had received a competency report "indicates that you are not competent to stand trial[,]" and that "[a]s a result of what is in the report the Court cannot allow you represent yourself in this hearing, ma'am."

---

[2] Simmons provided virtually no details regarding the Criminal Case against her. However, in support of their Motion to Dismiss and/or for Summary Judgment, the Wayne County Defendants attached various official court records that provide significant context. The Court will provide citations accordingly.

(ECF No. 34-1, PageID.321).   Judge Thomas and Simmons' counsel then discussed Simmons' right to an "independent evaluation at court expense." (*Id.*, PageID.322).   Judge Thomas agreed that Simmons was entitled to such an evaluation, but explained that she would revoke Simmons' bond and remand her into custody to ensure that she attended the evaluation:

> THE COURT:  Right.  This is what the Court will do.  The Court will order an independent evaluation but Ms. Simmons is going to be remanded in order to ensure that that evaluation is completed.  And –
>
> MS. SIMMONS: Your Honor.
>
> THE COURT: No no.  You may not.  And the reason that the Court is remanding Ms. Simmons at this time is because the Court did order that an evaluation be done at the Forensic Center [i.e., CFP].  Ms. Simmons appeared on one date and she was scheduled to follow up in order to complete the psychological testing that was scheduled for July 24th.  Ms. Simmons did not appear for that follow up exam.  In order for the Court to ensure that the independent evaluation is done in a timely manner Ms. Simmons will be remanded in order to complete that.

(*Id.*, PageID.323).

Simmons objected, asserting, "I was not required to return." (*Id.*, PageID.324). However, Judge Thomas did not veer from her finding, and revoked Simmons' bond "in order to ensure that we can have the independent evaluation done." (*Id.*, PageID.325). Simmons immediately retorted, "Oh my God you know this is, this okay this is out of retaliation.  This is flat-out out of retaliation.  This makes absolutely no sense, your Honor. So this is what I get for, for filing a complaint.[3]  This is, okay." (*Id.*).  Judge Thomas then

---

[3] Thomas has filed numerous lawsuits in this Court, at least one of which – Case No. 19-11595 – was filed against Judge Thomas a few months before the August 14, 2019 hearing.

4

set the next hearing date for October 25, 2019, but indicated her willingness to hold the hearing sooner if the psychological evaluation could be completed earlier.[4]   (*Id.*, PageID.325-26).

Simmons contends that, immediately following Judge Thomas's revocation of her bond on August 14, 2019, "Defendants[5] . . . forced [her] to strip her clothes off[6] and remove her shoes in the courtroom, for her walk barefoot to jail . . . [and] physically searched [her] body and hair without gloves." (ECF No. 15, PageID.119).  She further contends that the "[Courtroom Doe Deputies] had [her] arms twisted and pulled [during the handcuffing] . . . so extremely tight to the point [she] had to **scream in pain** with tears coming out of her eye for the cuffs to be removed," but that the Courtroom Doe Deputies "just laughed." (*Id.*, PageID.119) (emphasis in original).  Simmons contends that the handcuffing "caused injuries to her left wrist leaving it sprained, bruised, dark purple, swollen, and in extreme pain to the touch . . . with numbness tingling and pain throughout both of her hands . . . ." (*Id.*).  Simmons remained in custody from August 14, 2019 to October 2, 2019, at which time her bond was reinstated.

---

[4] Indeed, her hearing was moved up to October 2, 2019, at which time Simmons' bond was reinstated.  (ECF No. 30-3, PageID.283).

[5] As discussed below, one of the issues with Simmons' amended complaint is that in her amended complaint she often lumps all Defendants together, even though she does not appear to contend that most of them were present at the various times in question.

[6] Simmons clearly is not alleging that all of her clothes were removed in the courtroom, because a few sentences later in her amended complaint, she alleges that the Courtroom Doe Deputies "then took [her] behind the courtroom where [she] was stripped of the rest of her clothing, and excessively thrown and slammed [] face and head first into the concrete wall by [the Courtroom Doe Deputies]." (ECF No. 15, PageID.119).

As the following few passages demonstrate, Simmons' amended complaint is lengthy and sweeping in its breadth, chock full of conclusory legal jargon, and, in most cases, lumps all of the Defendants together, without specifying facts related to their individual alleged involvement in the issue being complained about:

> Defendants, "under color of law" acting in concert, intentionally with malice, ill will and in wanton and willful disregard with deliberate indifference to Plaintiff's Constitutional Rights, conspired, colluded and collaborated to violate Plaintiff's civil rights, due process rights and constitutional rights, and blatantly misrepresented and misstated facts with knowledge of falsity or with a reckless disregard for the truth and carried out acts to cause and did cause Plaintiff to be subjected to, but not limited to the following:
>
> to be subjected to an amount of force far in excess than what was legally justified; to be falsely arrested without probable cause; to be falsely detain[ed] and confine[d] (false imprisonment); to be assaulted and battered; to be sexually assaulted (removal/stripped of all clothing until completely naked, search of anus and vagina, to be made to bend over, made to physically grab rear posterior and spread them open, made to cough for vaginal searched) as a form of cruel and unusual punishment, humiliation, retaliation, embarrassment, and other deprivations and violations of Plaintiff's civil, due process and constitutional rights; to be denied medical treatment/care (lack of medical services); to be subjected to unlawful searches and seizures of person and property (theft and seizure of money directly from wallet); denied the right to speak or communicate verbally or in writing (violation of 1st Amendment) and threatened with and subjected to jailing if she even objects on the record; to be subjected to cruel and unusual punishment; to be denied the right to represent herself in a court of law, wherein Plaintiff cannot file any pleadings on her own behalf; to be denied the right to equal protection of the laws; to be denied due process of law; to be denied her rights under the Fifth Amendment; to be subjected to repeated violations and deprivations of rights committed on different days at different times by the same defendants, constituting separate injuries; and violations of all other civil rights, privacy rights, due process rights, and Constitutional Rights . . . .

(*Id.*, PageID.120).

6

Simmons then goes on to assert a number of vague complaints about the conditions of her confinement while at the Wayne County Jail, including being "subjected to" "poor sleeping conditions," "clogged vents and a white cotton substance[] covering Plaintiff from head to toe daily," "infestations of insects," "black mold in the shower area," "backed up sewage in the toilets and sinks," "threats of physical harm and violence," "witness violence and verbal assaults between other inmates," "a multitude of [lockdowns] of the ward for shortage of staff," "inconsistent mail service or completely no mail service at all," and "absolutely zero access to the law library or to any computers . . . ." (*Id.*).

Simmons essentially lays the blame for the revocation of her bond, her resulting temporary detention, and all of the wrongs that thereafter befell her while in custody on a broad and undefined conspiracy by all of the "Defendants." (*Id.*, PageID.118) ("Defendants conspired, contrived, colluded [] to blatantly lie, falsify and materially misrepresent facts to subvert justice in a court of law, that [she] failed to return to Defendant CFP as a ruse to illegally and unlawfully jail [her] . . . as a form of retaliation for filing a federal civil action against Defendant Thomas and respective police affiliates" and to "prevent [her] from providing testimony or evidence of crimes, including assaults, sexual assaults and excessive force perpetrated against her by Detroit police . . . ."). Part of the alleged conspiracy was to have Simmons "return to Defendant CFP under false pretenses, to be falsely imprisoned and involuntarily held within Defendant CFP under the ruse of being incompetent . . . ." (*Id.*, PageID.127). Simmons asserts the following claims:

- Federal claims against all Defendants under § 1983: civil conspiracy (Count I); excessive force (Count II); false arrest (Count III); false imprisonment (Count IV); assault (Count V); battery (Count VI);

intentional infliction of emotional distress (Count VII); ordinary and gross negligence (Count VIII); sexual assault (Count IX); "stigma plus" defamation; (Count X); violations of the Fourth, Fifth, and Fourteenth Amendments (Count XI); "deliberate indifference" (Count XII); and "trespass vi et armis" (Count XIII).[7]

- Federal "municipal/supervisory liability Monell claim and deliberate indifference" under § 1983 against Wayne County and CFP and individual defendants Pfannes, Dunlap, Davis, and Horne (Count XII).

- "Injunctive relief" claims against Judge Thomas for violation of Simmons' rights under the First Amendment (Count XIV), the Sixth Amendment (Count XV), the Eighth and Ninth Amendments (Count XVI), and the Fourth, Fifth, and Fourteenth Amendments (Count XVII).[8]

On February 6, 2023, the CFP Defendants filed a Motion to Dismiss.  (ECF No. 23).

Simmons filed a response to the CFP Defendants' motion (ECF No. 40)[9], and CFP filed a

reply (ECF No. 45).

On February 13, 2023, the Wayne County Defendants filed a Motion to Dismiss

and/or for Summary Judgment (ECF No. 30), but the briefing did not go as smoothly as it

---

[7] Some of these claims, such as Simmons' intentional infliction of emotional distress and negligence claims, appear to be traditional state law claims.  Here, the Court identifies them as Section 1983 claims because that is how Simmons characterizes them in her complaint.

[8] Although Simmons specifically titles these claims as ones for "injunctive relief," for all of her other claims against Judge Thomas, Simmons "demands judgment for Injunctive Relief against Defendant Thomas and judgment against all other Defendants jointly and severally, for [money damages] . . . " (*E.g.*, ECF No. 15, PageID.143).

[9] Simmons attached to this response a lengthy "Clarified/Amended Complaint in Relation to [the CFP Defendants]."  (ECF No. 40, PageID.407-445; ECF No. 40-1, PageID.446-53).  However, a plaintiff may not overcome a dispositive motion by submitting a new proposed amended complaint without obtaining leave of court, and Simmons has received no such permission here.  *See Moody v. County of Livingston*, No. 23-10508, 2023 WL 4498511, at *2, n. 1 (E.D. Mich. June 14, 2023) ("[T]he law is clear that a plaintiff may not cure deficiencies in his complaint by asserting new allegations or claims in a response to a defendant's motion to dismiss.") (citing cases).  Thus, the Court will not consider this filing in passing on the CFP Defendants' motion.

did with respect to the CFP Defendants' motion. Simmons filed a response to the Wayne County Defendants' motion, but the Court ultimately struck that filing because it significantly exceeded the allowable page limits, and utilized improper font sizes, line spacing, etc. (ECF No. 47). The Court instructed Simmons that it would permit her to file a response "**up to 30 pages in length**" "**using the correct font size and line spacing, and without inappropriately text blocking substantive content.**" (*Id.*, PageID.565) (emphasis in original). Simmons filed her revised response brief on June 1, 2023. (ECF No. 50).[10] The Wayne County Defendants filed a motion to strike Simmons' filing, arguing that it violated the Court's Order because it used a font size smaller than permitted by the Local Rules and because it "contains excessive single-spaced text blocking . . . ." (ECF No. 51, PageID.677). Having reviewed the Wayne County Defendants' dispositive motion and Simmons' response brief, the Court finds that no additional briefing is necessary. Thus, the Court will enter a separate order denying the Wayne County Defendants' motion to strike Simmons' response brief (ECF No. 51) as moot.[11]

---

[10] Simmons attached to this response a lengthy "Clarified/Amended Complaint in Relation to Defendants of Wayne County." (ECF No. 50, PageID.635-73). Again, the law is clear that she may not overcome a dispositive motion by submitting a new proposed amended complaint without obtaining leave of court, and Simmons has received no such permission here. *See Moody*, 2023 WL 4498511, at *2, n. 1. Thus, the Court will not consider this filing in passing on the Wayne County Defendants' dispositive motion.

[11] On July 27, 2023, Simmons filed an "amended response" to the Wayne County Defendants' dispositive motion (ECF No. 55), which those defendants have moved to strike (ECF No. 56). Because Simmons had no right to file the amended response, the Court will enter a separate order granting the motion to strike it. Also, on September 7, 2023, Simmons filed motions to amend her prior filings related to the Wayne County Defendants' dispositive motion and motion to strike (ECF Nos. 60, 61) and a proposed amended response to the Wayne County Defendants' dispositive motion (ECF No. 62). For the reasons explained in the Court's separate order, it will deny Simmons' motions and not consider her proposed amended response.

The Court will also address in this Report and Recommendation Simmons' claims against Judge Thomas.

## II.   Applicable Legal Standards

### A.   *Motion to Dismiss*

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency.   Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.* (citing *Twombly*, 550 U.S. at 556).   The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."   *Twombly*, 550 U.S. at 556.   Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."   *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, a reviewing court must accept the factual allegations in the complaint as true.   *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).   This tenet, however, "is inapplicable to legal conclusions.   Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading[.]" *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

### B.    *Motion for Summary Judgment*

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty*

11

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).  In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander*, 576 F.3d at 558 (internal quotations omitted).

### C.     *28 U.S.C. § 1915(e)*

Once a complaint is filed *in forma pauperis* under 28 U.S.C. § 1915(a), the court must test its sufficiency under § 1915(e).  Pursuant to 28 U.S.C. § 1915(e)(2)(B), a court "shall dismiss" a case at any time if it: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  In performing this review, the Court must construe the

*pro se* plaintiff's complaint liberally and hold it to a less stringent standard than one drafted by an attorney. *See Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005). Even applying this liberal standard, however, Simmons' amended complaint fails to state a claim upon which relief may be granted in several respects.

## III.   Discussion

### A.    Simmons' Conspiracy Claim (Count I) Should be Dismissed

As the Court explained in its September 23, 2022 R&R:

> A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). To adequately state a conspiracy claim, the plaintiff must show "that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed." *Revis*, 489 F.3d at 290 (citation omitted). To state a claim for conspiracy to violate civil rights under § 1985(3), a plaintiff must prove (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, and (3) an act in furtherance of the conspiracy, (4) which causes injury to a person or property, or a deprivation of any rights or privileges of a citizen of the United States. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994); *see also Moniz v. Cox*, 512 F. App'x 495 (6th Cir. 2013). Furthermore, the plaintiff must allege the conspiracy was motivated by racial or other class-based invidiously discriminatory animus. *Johnson*, 40 F.3d at 839.
>
> It is 'well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim....'" *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

(ECF No. 8, PageID.66-67) (quoting *Ayers v. Gabis*, No. 20-11735, 2021 WL 4785751, at *7 (E.D. Mich. Apr. 2, 2021), report and recommendation adopted, 2021 WL 4316853 (E.D. Mich. Sept. 23, 2021).

As was the case with Simmons' original complaint, nowhere in Simmons' amended complaint does she allege any facts or details regarding any agreement between the various defendants to take any action whatsoever, let alone to conspire with one another to violate Simmons' civil rights.  Instead, Simmons merely parrots the elements of a conspiracy claim, and attempts to support those elements with broad conclusory allegations and legal conclusions.  (ECF No. 15, PageID.133) ("At all times relevant herein, Defendants conspired for the purpose of depriving, either directly or indirectly, Plaintiff of the equal protection of the laws . . . .  At all times relevant herein, (a) Defendants colluded, (b) to accomplish an unlawful purpose or a lawful purpose by criminal or unlawful means, (c) performed one or more unlawful overt acts, and (d) caused damages to the Plaintiff.").  This clearly is not sufficient to state a claim for relief.  *See Iqbal*, 556 U.S. at 678-79, 681. Moreover, Simmons' allegations that the conspiracy is "evidenced" by the fact that Defendants "laugh[ed] as [she] was arrested," and by the mere fact that she was jailed for about 50 days following Judge Thomas' revocation of her bond (*id.*) do not reasonably allow for the inference of an agreement amongst the Defendants to violate Simmons' civil rights.  *See Easterling v. Rudduck*, No. 1:14-cv-876, 2015 WL 1567844, at *6 (S.D. Ohio Apr. 6, 2015), report and recommendation adopted, 2015 WL 2452437 (S.D. Ohio May 21, 2015); *see also Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy

must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one).

For all of these reasons, Simmons' conspiracy claim (Count I) against all Defendants should be dismissed.

### B.     Simmons' Claims Against Judge Thomas Should be Dismissed

In its initial R&R, the Court found that all of Simmons' claims against Judge Thomas should be dismissed *sua sponte* pursuant to 28 U.S.C. § 1915(e) because she is entitled to absolute judicial immunity.  (ECF No. 8, PageID.64-66).  The Court explained that "[t]he doctrine of judicial immunity protects judges from suits seeking monetary damages based on judicial acts performed under proper jurisdiction."  (*Id.*, PageID.65). Simmons seems to have misinterpreted this as a license to move forward with claims for injunctive relief only against Judge Thomas because (1) in each of the Counts addressed to all Defendants, Simmons writes that she "demands judgment for Injunctive Relief against Defendant Thomas and [a money judgment] against all other Defendants jointly and severally . . ." (ECF No. 15, *e.g.*, ¶¶ 91, 104, 116), and (2) where her claims are made only against Judge Thomas, Simmons captions them as claims for "injunctive relief" (*id.*, Counts XIV, XV, XVI, XVII).  Simmons' claims against Judge Thomas are flawed in multiple respects and should be dismissed.

Judicial immunity attaches so long as the act complained of was a judicial act (*i.e.*, a function normally performed by a judge while dealing with the parties in her judicial capacity) and was not taken in the absence of all jurisdiction.  *See Pierson v. Ray*, 386 U.S. 547, 553-55 (1967); *Stump v. Sparkman*, 435 U.S. 349, 356-62 (1978).  The Supreme Court

has articulated a two-prong test to determine whether an act is "judicial" in nature. *Stump*, 435 U.S. at 362. The Court must first consider whether the act is one that is "normally performed by a judge," and second, whether the parties dealt with the judge in his or her judicial capacity. *Id.*; *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Here, while Simmons may not agree with Judge Thomas' decision to revoke her bond to ensure she attended the psychological evaluation, or may believe that decision was retaliatory, there is no dispute that Judge Thomas made that decision as part of the Criminal Case against Simmons. Thus, the decision to revoke Simmons' bond was clearly one normally performed by a judge and was made in the judge's judicial capacity. Consequently, Judge Thomas is entitled to the full protection of absolute judicial immunity.

As the Sixth Circuit has explained, this immunity includes immunity from a request for injunctive relief. *Coleman v. Governor of Michigan*, 413 F. App'x 866, 873 (6th Cir. 2011) ("Judges generally are absolutely immune from civil suits for money damages under § 1983. [] Furthermore, "[b]y enacting the 1996 Federal Courts Improvement Act . . . Congress . . . expanded the ambit of judicial immunity by amending § 1983 so as to prohibit injunctive relief against a judicial officer.") (quoting *Gilbert v. Ferry,* 298 F. Supp. 2d 606, 611 (E.D. Mich. 2003)). *See also Callahan v. Miedema*, No. 1:20-CV-1170, 2020 WL 13005147, at *1 (W.D. Mich. Dec. 9, 2020) ("Judicial officers enjoy immunity from civil suits seeking money damages. [] This immunity likewise extends to claims asserted under 42 U.S.C. § 1983 seeking injunctive relief.").

Finally, Simmons does not specify any particular injunctive relief she would like the Court to grant, and to the extent she would ask this Court to direct Judge Thomas'

16

future handling of the Criminal Case or overrule any decisions Judge Thomas may have already made in that case, the Court lacks jurisdiction to do so. *See Wabeke v. Mulder*, 103 F. App'x 566, 567-68 (6th Cir. 2004) ("Upon review, we conclude that the district court properly dismissed Wabeke's complaint for lack of subject matter jurisdiction.  Because Wabeke's complaint merely reflected his dissatisfaction with the permanent injunction issued by the state court regarding his filing of further litigation and essentially sought federal court review of that state court order, the *Rooker-Feldman* doctrine precludes the exercise of federal jurisdiction."); *Booker v. Supreme Court of S.C.*, No. 2:16-CV58-MGL-MGB, 2016 WL 4394183, at *6 (D.S.C. Mar. 7, 2016), report and recommendation affirmed in relevant part, No. CV 2:16-58-MGL, 2016 WL 4269537 (D.S.C. Aug. 15, 2016), aff'd, No. 16-7140, 2017 WL 465296 (4th Cir. Feb. 3, 2017) ("to the extent Plaintiff seeks federal court review of any state court decisions (i.e. he wants the state filing injunction lifted []), the *Rooker-Feldman* doctrine would bar such review here.").

In sum, all of Simmons' claims against Judge Thomas should be dismissed.

### C. Simmons' § 1983 Claims Against the Defendant Individuals – Other Than Those Against the Courtroom Doe Deputies for Excessive Force/Sexual Assault – Should be Dismissed Due to Simmons' Failure to Plead Personal Involvement

In order to demonstrate any particular defendant's liability under § 1983, a plaintiff must first establish that he or she acted under color of state law and that his or her actions violated a right secured by the Constitution and/or laws of the United States.  *See Baker v. McCollan*, 443 U.S. 137 (1979).  Moreover, § 1983 liability cannot be premised upon mere allegations of *respondeat superior*; rather, in order for a defendant to be held liable under

§ 1983, there must be a showing that he or she personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 543 (6th Cir. 2008).

In other words, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'"  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)).   Likewise, "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a mere failure to act."  *Id.* (quotations omitted); *see Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1998) ("At best, [Plaintiff] has merely claimed that the [supervisory officials] were aware of alleged harassment, but did not take appropriate action.  This is insufficient to impose liability on supervisory personnel under § 1983.").  Analyzed against these standards, except for her Section 1983 claims related to the Courtroom Doe Defendants' alleged use of excessive force, assault/battery, and sexual assault (which claims the Court will address in the next section), Simmons' Section 1983 claims against the individual defendants fail as a matter of law in two respects.

First, to the extent Simmons attempts to place liability on any of these defendants through their participation in an alleged unlawful conspiracy, *see, e.g.*, ECF No. 15, ¶ 108

(alleging that "Defendants conspired and colluded to have Plaintiff falsely arrested . . ."); ¶¶ 38, 122 (alleging that defendants "conspired to have Plaintiff return to Defendant CFP under false pretenses, to be falsely imprisoned . . ." and that [a]s a result of the concerted unlawful malicious detainment and confinement (false imprisonment) by Defendants . . ."), the Court has already found that Simmons failed to properly allege any such conspiracy. *See, supra* at 13-15.  It is axiomatic that with no conspiracy at all, there can be no conspiracy to violate any particular right held by Simmons.  *Warson v. Walt Disney Co.*, 193 F.3d 520 (5th Cir. 1999) (". . . without a conspiracy, there can be no viable claim under section 1985.").

Second, to the extent Simmons attempts to place liability on the individual defendants by alleging that they "acquiesced in and [were] violating Plaintiff's clearly established Constitutional Rights," those are just conclusory allegations that recite an element of a Section 1983 claim, *Iqbal*, 556 U.S. at 678-79, 681, and Simmons simply never alleges any actual conduct by any of these defendants that would amount to a constitutional violation.  (ECF No. 15, ¶¶ 10, 12, 14, 23, 25).  In none of the Counts relating to any of these individuals does Simmons assert any active involvement in a constitutional violation by them.  *Shehee*, 199 F.3d at 300.  Indeed, other than in Count XII, they are not mentioned at all by name, and even in Count XII, where Simmons specifically identifies "Defendants Pfannes, Dunlap, Davis, and Horne" as being liable under § 1983, she notes that they are being sued "as Supervisors" (ECF No. 15, PageID.156), even though the thrust of the law explained above, is that there is no *respondeat superior* liability in the § 1983 context, meaning that an individual cannot be held liable under § 1983 merely because he

or she is a supervisor of others who committed a constitutional violation.[12]  *Monell*, 436 U.S. at 691.

The only paragraph of her amended complaint in which Simmons even arguably describes specific conduct by any of these individual defendants is ¶ 235.  But in that paragraph, Simmons merely provides sweeping conclusory allegations that fail to provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).  For example, Simmons writes that these individual defendants, referred to by Simmons as "Supervisors," "by their customs, practices, and/or policies, systematically failed to: a. supervise deputies and examiners to prevent violations of citizens' constitutional rights; b. to adequately train and/or supervise deputies regarding proper use of force; c. to adequately train and or supervise officers regarding legal search and/or seizures . . . ." (ECF No. 15, ¶235).  Again, these allegations are mere conclusions, bereft of any factual matter that could allow for the conclusion that any particular individual defendant was responsible for any constitutional harm suffered by Simmons.  *Shehee*, 199 F.3d at 300.

For all of these reasons, other than Simmons' excessive force/sexual assault claims

---

[12]  Similarly, in her "Section 1983" claims, Simmons specifically asserts that all individual defendants are responsible "under the doctrine of respondeat superior, vicarious liability" and/or "Supervisory liability" (ECF No. 15, ¶¶ 102-03 (Count II – excessive force); ¶¶ 114-15 (Count III – false arrest); ¶¶ 129-30 (Count IV – false imprisonment); ¶¶ 140-41 (Count V – assault); ¶¶ 149-50 (Count VI – battery); ¶¶ 169-70 (Count VII – intentional infliction of emotional distress); ¶¶ 191-92 (Count VIII – negligence); ¶¶ 199-200 (Count IX – sexual assault); ¶¶ 211-12 (Count X – stigma-plus defamation); ¶ 230 (Count XI – constitutional violations); ¶ 243 (Count XII – deliberate indifference); ¶ 251 (Count XIII – trespass vi et armis)), when that is simply contrary to the law governing such claims.  *See Monell*, 436 U.S. at 691; *Phillips*, 534 F.3d at 543.

against the Courtroom Doe Deputies, all of her § 1983 claims against the individual Wayne County Defendants and the individual CFP Defendants should be dismissed.

> ### D. Simmons' Section 1983 Excessive Force, Assault/Battery, and Sexual Assault Claims Against the Courtroom Doe Deputies (and Her False Arrest Claim) Should be Dismissed because They are Barred by the Statute of Limitations

In Section 1983 cases, federal courts apply their state's statute of limitations for personal injury cases. *Wilson v. Garcia*, 471 U.S. 261, 272 (1985). In Michigan, the applicable statute of limitations is three years. *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 430 (6th Cir. 2016). Federal law governs the accrual date for the statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007). For claims under Section 1983, "the statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of ... [the] injury has occurred." *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007). Here, Simmons' only remaining individual defendant Section 1983 claims are her claims regarding the Courtroom Doe Deputies' use of excessive force (and assault/battery) in connection with Simmons' handcuffing, and their conduct in connection with the alleged unlawful strip search. Simmons alleges (and does not dispute) that both of those events took place on August 14, 2019. The Wayne County Defendants and the CFP Defendants argue that because Simmons filed her complaint beyond the limitations period, on August 19, 2022, these claims are subject to dismissal. Simmons argues that she "timely filed her complaint on August 15, 2022." (ECF No. 50, PageID.593).

First the Court must determine the accrual date for the claims in question. Simmons

argues that her "false arrest claim and excessive force[13] claim accrued on October 3, 2019,

when [her] illegal detention ended." (*Id.*).  Simmons' argument lacks merit, as these claims

all accrued on August 14, 2019.  *See Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007),

*abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223, 227 (2009).

In *Fox*, the Sixth Circuit explained that in *Wallace v. Kato*, 549 U.S. 384, 387-88

(2007), the Supreme Court "specifically held that a claim for wrongful arrest under § 1983

accrues *at the time of the arrest*, or, at the latest, when detention *without legal process*

ends,*"* and that "[a] § 1983 claim for excessive force in effectuating an arrest accrues at

the time of arrest." *Fox*, 489 F.3d at 233 (emphasis added).  *See also Uhrynowski v. County

of Macomb*, No. 06-15483, 2007 WL 2984001 at *6 (E.D. Mich. Oct. 12, 2007) ("The

Supreme Court has held that the statute of limitations upon a § 1983 claim for false arrest

in violation of the Fourth Amendment, where the arrest is followed by criminal

proceedings, begins to run at the time the claimant becomes detained pursuant to legal

process, such as an arraignment[.]").  In this case, while Simmons may disagree with the

way Judge Thomas handled the August 14, 2019 hearing, she was not detained "without

legal process."  There was a hearing on that date which was attended by both Simmons and

her counsel, and at which both participated.  (ECF No. 34-1).  That was also the date on

which Simmons alleges the Courtroom Doe Deputies assaulted her in effectuating her

arrest and in conducting the strip search.  Thus, Simmons' false arrest and assaultive

---

[13] Although Simmons did not specifically argue this point regarding her "Section 1983" sexual assault or assault/battery claims, clearly the same statute of limitations analyses apply to those claims.

conduct claims accrued on the date of her arrest, August 14, 2019.

Turning to the statute of limitations analysis, Simmons seems to argue that even if those claims did accrue on August 14, 2019, her complaint was still timely for two reasons. First, she argues that her complaint, mailed on August 15, 2019, and received by the Court on August 19, 2019, was "timely" due to August 14, 2022, being a Sunday and application of the Court's temporary extension of the "prisoner mailbox rule" to non-prisoner pro se litigants during the COVID-19 pandemic. (ECF No. 50, PageID.594). Second, she argues that even if her complaint was untimely, she is entitled to "equitable tolling." (*Id.*, PageID.593). Neither argument has merit.

As to her argument that her complaint was actually timely, Simmons starts by noting that August 14, 2022, was a Sunday, and thus correctly argues that under Fed. R. Civ. P. 6(a)(1)(C)[14] her complaint's filing deadline was August 15, 2022. (*Id.*, PageID.594). The problem though, is that instead of appearing at the United States District Court courthouse on August 15, 2022, and actually filing her complaint with the Court on that day, Simmons *mailed* her complaint on that day, and it was not received by the Court Clerk until August 19, 2022. (ECF No. 1, PageID.53). Under the Federal Rules, a complaint mailed to the court is deemed filed not on the mailing date, but on the date the court receives it. Fed. R. Civ. P. 5(d)(2)(A) ("A paper not filed electronically is filed by delivering it ... to the clerk."). Thus, looking only at the relevant dates and the applicable federal rules, there is

---

[14] Simmons references "Fed. R. Civ. P. Rule 26(C)," but there is no such Rule, and she clearly means to reference Rule 6(a)(1)(C), which provides that in determining the "last day of a period [of time specified in the Rules] [], if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."

no dispute that Simmons' complaint was tardy.

Trying to avoid that outcome, Simmons makes two additional arguments: (1) that her complaint was timely under 26 U.S.C. § 7502; and (2) that an Administrative Order of the Court issued during the COVID-19 pandemic permitted *pro se* litigants to file papers by mail and indicated that mailed papers would be deemed to have been filed on the postmark date. (ECF No. 50, PageID.594). Again, neither of her arguments is meritorious. Section 7502 applies only to the mailing of tax returns and related documents required to be filed by the Internal Revenue Service. 26 U.S.C. § 7502 ("If any return, claim, statement, or other document required to be filed . . . ***under authority of any provision of the internal revenue laws*** is [] delivered by United States mail . . . the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery . . . .") (emphasis added). And, although an earlier Administrative Order did advise *pro se* litigants in civil cases that mailed filings would be deemed to have been filed on the postmark date, *see* 22-AO-018 (available at www.http://www.mied.uscourts.gov/PDFFIles/22AO018.pdf) (last visited September 11, 2023), the Administrative Order in effect at the time Simmons filed her complaint made clear that because the Court had resumed its normal operations, "it is ***no longer necessary to use the postmark date as the filing date*** on documents submitted by *pro se* filers," and that "***[e]ffective immediately [July 19, 2022]***, but subject to the 'Prison Mailbox Rule, Rule 3(d) of the Rules Governing § 2554 [sic] Proceedings and Rule 3(d) of the Rules Governing § 2255 Proceedings, ***the filing date will be the date the mail was received at the Court***." *See* 22-AO-041 (available at

24

http://www.mied.uscourts.gov/PDFFIles/22AO041.pdf) (last visited September 11, 2023)

(emphasis added).  Thus, under Fed. R. Civ. P. 5(d)(2)(A) and the operative Administrative

Order, the "filing date" of Simmons' complaint was August 19, 2022, when it was received

by the Court, meaning that Simmons' complaint was filed beyond the statute of limitations

applicable to her claims at issue.

Any argument by Simmons that she is entitled to rely on the "prison mailbox rule"

lacks merit.  The prison mailbox rule creates a "relaxed filing standard [where] a pro se

***prisoner's*** complaint is deemed filed when it is handed over to prison officials for mailing

to the court ... with an assumption that, absent contrary evidence, a prisoner does so on the

date he or she signed the complaint.  *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008)

(emphasis added).  The law is clear that "the prison mailbox rule applies only to prisoners."

*Schuh v. Clayton*, No. 20-10468, 2022 WL 4553042, at *4 (E.D. Mich. Sept. 28, 2022)

(citing *Cretacci v. Call*, 988 F.3d 860, 867 (6th Cir. 2021)).  Since Simmons does not allege

she was in custody when she filed her complaint she may not rely on the prison mailbox

rule.

Finally, the Court declines to find that Simmons is entitled to equitable tolling.  The

doctrine of equitable tolling "permits courts to extend the statute of limitations on a case-

by-case basis to prevent inequity."  *Truitt v. Cty. of Wayne*, 148 F.3d 644, 648 (6th Cir.

1998).  The Sixth Circuit has noted that the doctrine is used "sparingly" by federal courts,

and that the decision to invoke equitable tolling in a particular case lies solely within the

district court's discretion.  *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010); *Truitt*,

148 F.3d at 648.  The party seeking equitable tolling bears the burden of proving her

entitlement to it.  *See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).

In Section 1983 actions, "[j]ust as limitations periods are taken from state law, so are the rules regarding tolling."  *Curran v. City of Dearborn*, 957 F. Supp. 2d 877, 883 (E.D. Mich. 2013).  In Michigan, equitable tolling of statutes of limitations applies in limited circumstances, including when there is a "preexisting jumble of convoluted caselaw" due to a particular claim arising under different statutes of limitations, *see Trentadue v. Buckler Lawn Sprinkler*, 479 Mich. 378, 738 N.W.2d 664, 679-80 (2007), or when a defendant's conduct constitutes "fraudulent concealment," *Aslani v. Sparrow Health Sys.*, No. 1:08-cv-298, 2009 WL 736654, at *10 (W.D. Mich. Mar. 12, 2009).  None of those situations apply here.  While Simmons claims she "did not have any knowledge" of 22-AO-041, issued on July 19, 2022, and that her "confusion as to the actual date [her] complaint is considered filed was inadvertently created by the Court's COVID pandemic guidelines," 22-AO-041 was issued almost a full month before the statute of limitations expired, and made clear that for a non-prisoner *pro se* litigant who chose to file papers with the Court by mail instead of filing them in person, "the filing date will be the date the mail was received at the Court."  *See* 22-AO-041.  Thus, the complaint was untimely as to the claims in question.  *Gora v. Gelabert*, No. 1:08-CV-992, 2009 WL 3233849, at *9 (W.D. Mich. Sept. 30, 2009) (". . . a *pro se* litigant, whether plaintiff or defendant, is required to follow the law, and assumes the risks and hazards that accompany self-representation.  [] '*Pro se* litigants are required to follow the rules of civil procedure and easily-understood Court deadlines.'") (citations omitted).

Analyzing the equitable tolling question under federal law leads to the same result.

The Sixth Circuit has instructed courts to consider the following factors when determining

whether to apply the doctrine:

> (1) the plaintiff's lack of notice of the filing requirement; (2) the
> plaintiff's lack of constructive knowledge of the filing requirement; (3)
> the plaintiff's diligence in pursuing [his or] her rights; (4) an absence
> of prejudice to the defendant; and (5) the plaintiff's reasonableness in
> remaining ignorant of the particular legal requirement.

*Jackson v. United States*, 751 F.3d 712, 719 (6th Cir. 2014) (citation omitted).

Here, Simmons has not met her burden of showing that the Court should apply

equitable tolling.  Simmons admits that she knew the Court had established guidelines

during the COVID-19 pandemic regarding *pro se* plaintiffs' filing of papers.  (ECF No. 50,

PageID.594).  She had almost four full weeks to discover that the Court had returned to

normal operations and that, per 22-AO-041, if she mailed her complaint, it would be

deemed "filed" on the day it was received by the Court, not on the day she mailed it.

Moreover, despite having three years to file her complaint, Simmons waited until the very

last day of the three-year limitations period to mail in her complaint.  That can hardly be

characterized as acting "diligently."   The only individual defendants against whom

Simmons' false arrest and assaultive conduct claims apply – the Courtroom Doe

Defendants –are prejudiced in that it has now been more than four years since the events

in question are alleged to have occurred, and they have yet to be identified, let alone served

with process.  Finally, considering what a prolific litigant Simmons was when she filed her

complaint in this case[15], the Court cannot say that she acted reasonably in failing to discover

---

[15] Prior to commencing the instant action on August 19, 2022, Simmons had filed at least ten other
lawsuits in this Court.  (*See* Case Nos. 11-14936, *Simmons v. Wayne County Community College*

22-AO-041 prior to mailing her complaint on August 15, 2022.

For all of these reasons, Simmons' false arrest, excessive force, assault/battery, and sexual assault claims were untimely filed and should be dismissed.

### E.      CFP Defendants' Motion

While the CFP Defendants assert ten separate bases as to why Simmons' claims against them should be dismissed, in light of the above analyses, the Court here will only address their argument as to Eleventh Amendment immunity.

It is undisputed that CFP is operated by the Michigan Department of Health and Human Services (MDHHS), and as such, that it is an arm of the State of Michigan.  One of the CFP Defendants' principal arguments is that the Eleventh Amendment bars all of Simmons' claims against CFP and against its employees in their official capacities.  They are correct.

The Eleventh Amendment bars Section 1983 and state law claims claims against a State and its agencies unless the State has waived its immunity, consented to be sued, or Congress has abrogated that immunity, none of which exceptions apply here.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 58, (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Al - Janabi v. Wayne State Univ.*, No. 21-1399, 2021 WL 8264677, at *2 (6th Cir. Dec. 15,

---

*District*; 18-13812, *Simmons v. City of Detroit, et al.*; 18-13813, *Simmons v. City of Detroit, et al.*; 19-11531, *Simmons v. City of Warren, et al.*; 19-11595, *Simmons v. Swafford, et al.*; 19-12091, *Simmons v. Benson, et al.*; 20-11650, *Simmons v. City of Detroit, et al.*; 18-14058, *Simmons v. Henry Ford Health System, et al.*; 19-11726, *Simmons v. City of Southfield*; 21-10955, *Simmons v. Charleston, et al.*).

2021) ("under the Eleventh Amendment, "the States' constitutional immunity from suit prohibits *all* state-law claims filed against a State in federal court.") (quoting *Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005)).[16]  Eleventh Amendment immunity also applies to state and state agency employees who are sued in their official capacities because "[s]uits against state officials in their official capacity [are] treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Cty.*, 574 F.3d 334, 344 (6th Cir. 2009)).  Since CFP is an arm of the State of Michigan, Simmons' claims against CFP, and against Horne and the CFP Examiner in their official capacities, are barred by the Eleventh Amendment and should be dismissed.  *See Kanuszewski v. Michigan Dep't of Health & Human Servs.*, 927 F.3d 396, 413 (6th Cir. 2019) (holding Eleventh Amendment barred plaintiffs' claims against MDHHS and its agents to the extent they were sued in their official capacities).

Simmons counters that her "policy or custom" *Monell* claims against CFP are not barred by the Eleventh Amendment.  (ECF No. 40, PageID.365).  The basis of Simmons' argument is unclear, though it appears she may not understand that the "holding in *Monell* is limited to 'local government units which are not considered part of the State for Eleventh Amendment purposes[.]'"  *Hedrick v. W. Michigan Univ.*, No. 1:22-CV-308, 2022 WL 10301990, at *12 (W.D. Mich. Oct. 17, 2022) (quoting *Will*, 491 U.S. at 70 and *Monell*,

---

[16] The Court notes that an exception to Eleventh Amendment immunity exists when a plaintiff seeks "prospective injunctive relief to prevent a continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64, 68 (1985) (citing *Ex parte Young*, 209 U.S. 123 (1908)). *See also Pennhurst*, 465 U.S. at 103.  However, Simmons seeks no such injunctive relief from the CFP Defendants.

436 U.S. at 690 n. 54), and that, as noted above, CFP is an arm of the state, not a municipality. *See also James v. Anderson*, No. 12-10273, 2018 WL 6171474, at \*17 (E.D. Mich. Nov. 26, 2018) ("Again, while *Monell* instructs that there are instances in which ***a municipality*** may be sued, the sovereign immunity of ***a state and its adjuncts*** under the Eleventh Amendment has no exceptions, apart from suits for prospective injunctive relief which are not at issue here.") (emphasis added).  Thus, *Monell* simply does not apply to Simmons' claims against the CFP Defendants, and any "policy," "custom," or "practice" claims asserted by Simmons against them should be dismissed.

In sum, for all of the above reasons, Simmons' claims against CFP, and her claims against defendants Horne and the CFP Examiner in their official capacities, should be dismissed.

### F.    Wayne County Defendants' Motion

To the extent Simmons attempts to assert *Monell* claims against Wayne County, those claims should be dismissed.  While a *municipality* may not be held liable under Section 1983 on a *respondeat superior* theory, it could have such liability if the plaintiff can show that a custom or practice of the municipality was the moving force behind her alleged injury. *Wright v. City of Euclid*, 962 F.3d 852, 879-80 (6th Cir. 2020).  A plaintiff can make this showing in four ways: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation omitted).  But, to state a claim for

relief on any such theory of liability, the plaintiff must comply with *Twombly's* and *Iqbal's* pleading requirements, meaning that she must allege facts sufficient to identify the specific policy, custom, or acquiescence, and mere conclusory assertions are not enough. *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 388-89 (6th Cir. 2017); *Rayfield v. City of Grand Rapids*, 373 F. Supp. 3d 962, 977 (W.D. Mich. 2018) ("Conclusory assertions [of a policy or custom] are not enough to state a *Twombly* plausible *Monell* claim.").

Here, Simmons' *Monell* claims against Wayne County fail because, contrary to her argument that she "clearly alleged specific and plausible facts supporting" her *Monell* claims against Wayne County (ECF No. 50, PageID.595), even liberally construing the allegations in her amended complaint, the reality is that Simmons alleges no specific facts from which the Court could discern any particular policy, custom, or acquiescence that caused the alleged unconstitutional conduct.

The closest Simmons comes to presenting such allegations in her amended complaint is her allegation that Wayne County had "been sued multiple [times] in both state and federal court for violations and deprivations of individuals' constitutional rights and for acts, actions and misconduct of its employees . . . which lead [sic] to injuries of individuals." (ECF No. 15, PageID.157). But these allegations by Simmons are unavailing as they provide no details whatsoever regarding any of these lawsuits from which the Court could draw the plausible inference that the conduct at issue here occurred because of anything having to do with the events at issue those cases. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Indeed, "the mere fact that a number of lawsuits have been filed, without any information as to whether the suits are meritorious or spurious, or alternatively, any

evidence that the [defendant] ignored such complaints such that it constituted deliberate indifference to any potential problem of [unconstitutional conduct]," is insufficient to state a *Monell* claim. *Sistrunk v. City of Hillview*, 545 F. Supp. 3d 493, 504 (W.D. Ky. 2021) (citing *Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 543 (S.D.N.Y. 2015) ("'a plaintiff's citation to a few lawsuits involving claims of alleged constitutional violations is not probative of the existence of an underlying policy by a municipality or department of corrections") and *Pharaoh v. Dewees*, No. 14-cv-3116, 2016 WL 2593842, at *5 (E.D. Pa. May 4, 2016) ("[T]he fact that lawsuits against [the defendant] were filed, without more, indicates nothing, as people may file a complaint for many reasons, or for no reason at all, and evidence that they filed complaints does not indicate that the policies that [plaintiff] alleges exist do in fact exist.")).

Simmons alleges that she can also establish her claim by showing a "single violation of federal rights, accompanied by a showing that Defendants had failed to train its [sic] employees to handle recurring situations presenting an obvious potential for such violations[.]" (ECF No. 15, PageID.158) (internal quotations omitted). But even if Simmons could potentially state a *Monell* claim through a "single violation," she has failed to allege any *facts* from which such a failure to train could be discerned. Instead, she merely describes incidents that allegedly happened to her, and asserts, in wholly conclusory fashion, that the incidents were the product of various policies. Again, such conclusory allegations are insufficient to state a claim for relief. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

### G.      *Simmons' State Law Claims Should be Dismissed Without Prejudice*

Judge Parker has already adopted the undersigned's recommendation that the Court decline to exercise supplemental jurisdiction over Simmons' state law claims, and that those claims be dismissed without prejudice.  The Court incorporates herein by reference is discussion of this issue from the R&R (ECF No. 8, PageID.68-69), but highlights its ultimate findings that such dismissal was warranted because "[t]he majority of Simmons' claims arise under state law and, thus, 'substantially predominate' over her remaining federal claims," "the value of comity – of allowing the Michigan state courts to rule on aspects of state law – weighs against the exercise of supplemental jurisdiction here," and "given the nature of Simmons' complaint, declining to exercise supplemental jurisdiction over her many state law claims will further the "just, speedy and inexpensive determination" of the claims over which this Court has original jurisdiction. Fed. R. Civ. P. 1." (*Id.*, PageID.69).

Simmons' amended complaint has not altered the analysis.  As discussed above, her conspiracy claims and most all of her other federal claims are woefully deficient in that they are supported by nothing more than a series of repetitive legal conclusions and jargon. Thus, at least from the standpoint of the actual facts alleged in the amended complaint, Simmons' state law claims still predominate, and comity principles dictate that Michigan courts rule on those matters.  Moreover, Simmons' additional filings since the Court issued its R&R amply demonstrate that this entire action will be most fairly and efficiently addressed the narrower the issues and claims are.  Accordingly, the Court should again decline to exercise supplemental jurisdiction over Simmons' state law claims (including

those state law claims that Simmons characterizes as arising under "Section 1983") and should dismiss those claims without prejudice.

## IV.   <u>Conclusion</u>

For the reasons stated above, **IT IS RECOMMENDED** that the dispositive motions filed by the CFP Defendants **(ECF No. 23)** and the Wayne County Defendants **(ECF No. 30)** be **GRANTED** to the extent discussed above, with all federal claims being **DISMISSED**; that Simmons' claims against Judge Thomas be **DISMISSED** pursuant to 28 U.S.C. § 1915(e); and that that Simmons' state law claims be **DISMISSED WITHOUT PREJUDICE**.

Dated: September 11, 2023          <u>David R. Grand</u>
                                    DAVID R. GRAND
                                    UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also*

*Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 11, 2023.

s/Eddrey O. Butts

EDDREY O. BUTTS

Case Manager
